In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1403

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN INGRAM,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cr-00044-1 — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 8, 2020 — DECIDED JANUARY 17, 2020

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* A federal jury convicted Kevin Ingram of three counts of Hobbs Act robbery (Counts 1–3), one count of attempted Hobbs Act robbery (Count 4), and four counts of possession of a firearm in furtherance of those crimes of violence (Counts 5–8). Ingram now appeals, arguing (1) that there was insufficient evidence on Count 5 for the jury to return a conviction and (2) that his conviction on Count 8 cannot stand because attempted Hobbs Act robbery does not

qualify as a crime of violence. For the following reasons, we affirm.

## I. Background

Over the course of eight days in October 2017, Ingram committed three robberies and one attempted robbery in Indianapolis, Indiana. Police eventually identified Ingram as the culprit based on his social media postings and two anonymous tips. The government charged Ingram with three counts of Hobbs Act robbery and one count of attempted Hobbs Act robbery under 18 U.S.C. § 1951(a), as well as four counts of brandishing a firearm in connection with each of those crimes of violence under 18 U.S.C. § 924(c).

At trial, Ingram admitted guilt as to Counts 1–4, but contested the four § 924(c) charges. In support of those charges, the government submitted testimony, video surveillance footage, digital photographs, and other physical and electronic evidence, showing the following:

The first robbery—the basis of Counts 1 and 5—took place on October 16. Ingram entered an "Eyes by India" salon and shoved into the store clerk's back what she believed was a gun. Ingram then ordered her to give him all the money in the cash register. After the clerk handed Ingram the cash, he forced her into a breakroom and fled. The clerk did not see, and the security cameras in the store did not capture an image of, the object that Ingram shoved against her back. But the clerk testified that she believed it was a gun because the object felt "hard" and like "metal."

The next day, while on an errand with his girlfriend, Vyctorya Cobb, Ingram robbed the DJ Beauty Supply (Counts 2

& 6). Approaching the store clerk at the counter, Ingram suddenly pulled out a gun and demanded money from the register. After receiving about $450, Ingram fled in Cobb's car. While driving away, Cobb noticed Ingram remove a large amount of cash and a small black gun from his hoodie. After Cobb pulled the car over and confronted Ingram about what he had done, Ingram confessed to robbing the store.

Three days later, Ingram robbed another Eyes by India salon, threatening both a store clerk and other customers with a gun (Counts 3 & 7). Finally, three days after the second Eyes by India robbery, Ingram ran out of luck when he tried to rob a Dollar Tree (Counts 4 & 8). Despite her terror at Ingram's weapon, the clerk could not open the register and Ingram left empty-handed.[1]

At the close of the government's case-in-chief, Ingram moved for a directed verdict on Counts 5–8 under Federal Rule of Criminal Procedure 29. He argued that the government had not proven beyond a reasonable doubt that the object he had brandished during the robberies was in fact a firearm. The district court rejected that argument, and the case was submitted to the jury, which returned a guilty verdict on all eight counts. This appeal followed.

## II. Discussion

Ingram contends there was insufficient evidence that he brandished a firearm to support his conviction on Count 5,

---

[1] A military veteran present at the fourth attempted robbery testified that she was convinced that Ingram had brandished a real firearm based on the sound the object in his hand made when he pulled the slide back to chamber a round.

and that his conviction on Count 8 cannot stand because attempted Hobbs Act robbery is not a crime of violence.

### A. Count Five

We first address Ingram's argument that the government presented insufficient evidence for a jury to convict him on Count 5: brandishing a firearm in furtherance of the first robbery at the Eyes by India on October 16, 2017. Although we review a district court's denial of a motion for acquittal under Rule 29 de novo, we ask only "whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Johnson*, 874 F.3d 990, 998 (7th Cir. 2017) (quoting *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010)). Reversal is therefore only appropriate where "no rational trier of fact could have found the defendant guilty." *Doody*, 600 F.3d at 754.

Section 924(c)(1)(A) requires courts to impose certain mandatory sentences on any person who "during and in relation to any crime of violence … uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). Ingram asserts that his conviction on Count 5 must be overturned because the evidence was insufficient—without making improper inferences from evidence submitted in support of other counts—to conclude that the object he brandished during the robbery on October 16 was a firearm.

The parties' arguments regarding Count 5 raise difficult questions about what evidence jurors may properly consider and the inferences they may draw in cases where a defendant has allegedly committed multiple crimes in a short period of time. We need not answer those questions, however, because the evidence that the parties agreed was properly before the

jury on Count 5 was sufficient for a reasonable jury to find that Ingram brandished a firearm during the robbery on October 16, 2017. That evidence was:

1.  Security camera images showing Ingram entering the store and then pushing the store clerk toward the back of the store while holding something against her back.

2.  The clerk's testimony that Ingram held something against her back and that she believed the item was a gun because it felt "really hard" and like "metal."

3.  Cobb's testimony that on October 17, she saw Ingram with a small firearm while he was in her car.

*First*, as a general matter, when a witness can testify that a defendant brandished a firearm, "[t]here is no requirement that the government produce the firearm or other corroborating evidence to sustain a conviction" under § 924(c). *United States v. Lawson*, 810 F.3d 1032, 1039–40 (7th Cir. 2016). Indeed, the government need not "produce an expert witness" or even "more than one lay witness" to prove a defendant used a firearm during the commission of a crime. *Id.* at 1040. Thus, Cobb's testimony is sufficient by itself to establish that Ingram had a firearm on October 17.

*Second*, as Ingram conceded in his opening brief,[2] the jury could properly consider Cobb's testimony that Ingram had a

---

[2] At oral argument Ingram's counsel seemed to suggest the jury could not consider this evidence. However, Ingram's opening brief stated: "Other than the testimony of Ms. Patel, the only evidence regarding Mr. Ingram's use of a firearm in Count 1 was Ms. Cobb's testimony that he had a firearm on the dates of other robberies. … That's as far as the evidence goes on Count 1."

firearm on October 17 as circumstantial evidence that he had a firearm during the robbery on October 16. *Cf. Ojile v. Smith*, 779 F. App'x 288, 298 (6th Cir. 2019) (concluding that "[g]iven [the] high degree of similarity across multiple robberies, a reasonable jury could infer the presence of a gun in the facially identical attempted robberies from the fact that the pair used a gun in all their completed robberies").

*Third*, a reasonable inference from this circumstantial evidence is that when the clerk felt a hard, metal object shoved against her back the night of October 16, she was feeling the firearm Cobb saw the next day. *Accord United States v. Wilson*, 166 F.3d 1219 (9th Cir. 1999) (unpublished table decision) (affirming § 924(c) conviction where, mid-robbery, defendant said he had gun, but never displayed it, given he committed two other robberies within weeks where he was seen with a firearm at the time or shortly thereafter).

*Finally*, there is absolutely no evidence to support the notion that the object in question was anything other than a gun. Consequently, we conclude that a reasonable jury could find that Ingram brandished a firearm in commission of the October 16 robbery.

### B. Count Eight

We now turn to Ingram's assertion that his conviction on Count 4 for attempted Hobbs Act robbery cannot serve as the predicate offense for his conviction on Count 8 under 18 U.S.C. § 924(c)(1)(A). As an initial matter, the parties dispute whether we should review Ingram's conviction on Count 8 for plain error or de novo. As Ingram acknowledges, he never raised this argument before the district court. Thus, our review must proceed under the plain error standard. *See, e.g.*,

*United States v. Cureton*, 739 F.3d 1032, 1045 (7th Cir. 2014) (explaining that because the defendant had not raised the issue before the district court, his claim for unconstitutional sentencing could only be reviewed for plain error). Regardless of the standard of review, however, application of our precedent requires us to affirm Ingram's conviction on Count 8.

*First*, we have previously held, and Ingram does not disagree, that Hobbs Act robbery constitutes a crime of violence under the elements test contained in 18 U.S.C. § 924(c)(3)(A). *See, e.g.*, *United States v. Rivera*, 847 F.3d 847, 848–49 (7th Cir. 2017) (holding that, under the categorical approach, Hobbs Act robbery qualifies as a crime of violence).

*Second*, a jury must find that a defendant had the specific intent to commit Hobbs Act robbery to convict him of attempted Hobbs Act robbery. *See United States v. Villegas*, 655 F.3d 662, 668 (7th Cir. 2011).

*Third*, in *Hill v. United States*, we explained that "[w]hen a substantive offense would be a violent felony under [18 U.S.C.] § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony" so as long as the attempt offense "requires proof of intent to commit all elements of the completed crime." 877 F.3d 717, 719 (7th Cir. 2017); *see also United States v. D.B.B.*, 903 F.3d 684, 691–93 (7th Cir. 2018) (explaining that attempted robbery under Indiana law did not qualify as a crime of violence under *Hill* because its elements did not include the intent to commit robbery). And, given § 924(e) and § 924(c) use almost identical language, we extend *Hill*'s ruling to § 924(c) as well.[3]

---

[3] Although § 924(e)(2)(B)(i) only prohibits force against the person of another, while § 924(c)(1)(A)(ii) prohibits force against both the person *or*

Thus, given (1) Hobbs Act robbery constitutes a crime of violence and (2) the jury had to find that Ingram intended to commit Hobbs Act robbery in order to convict him for attempt, we conclude that Count 4 was a valid predicate offense for Ingram's conviction in Count 8.

### III. Conclusion

For the foregoing reasons, we AFFIRM Ingram's convictions.

---

property of another, the difference is inconsequential. *See generally* 18 U.S.C. § 1951(b)(1). Ingram does not contend otherwise.